No. 3--05--0786

Filed October 17, 2006.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

HIGHWAY TRAFFIC SAFETY            )    Appeal from the Circuit Court
ASSOCIATES, LLC,                  )    of the 13th Judicial Circuit,
                                  )    Grundy County, Illinois,
        Plaintiff-Appellee,       )
                                  )
        v.                        )    No. 04--LM--85
                                  )
GOMIEN AND HARROP, an Illinois    )
Law Firm and Partnership,         )    Honorable
                                  )    William Balestri,
        Defendant-Appellant.      )    Judge, Presiding.

_____

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court:
_____

The plaintiff, Highway Traffic Safety Associates, LLC, is a consulting firm located in Bethesda, Maryland. The defendant, Gomien & Harrop, was formerly an Illinois law firm. The plaintiff was granted a default judgment in Maryland against the defendant. The plaintiff then filed a motion to enforce judgment here in Illinois under the Uniform Enforcement of Foreign Judgments Act. 735 ILCS 5/12--650 et seq. (West 2004). The defendant moved to vacate, claiming Maryland lacked personal jurisdiction over it. The circuit court denied the defendant's motion, finding jurisdiction in Maryland was proper. The defendant appeals, contending the circuit court erred in denying its motion to vacate for lack of personal jurisdiction. The defendant also claims that the trial court

erred by allowing the plaintiff to proceed in a civil action in Illinois under section 45--45 of the Limited Liability Company Act. 805 ILCS 180/45--45(a) (West 2004). We affirm.

The parties stipulated the following facts. The defendant law firm, which dissolved on July 31, 2003, was located in Morris, Illinois, at all times relevant to this case. Neither partner of the firm has ever lived or practiced law in Maryland. The defendant did not have any contact with any Maryland resident or entity other than the plaintiff.

Roger Gomien, a partner in the defendant law firm, represented a plaintiff in a lawsuit against Ford Motor Company (Ford). In May 2003, a motion for summary judgment filed by Ford was pending. To respond to that motion, Gomien deemed it necessary to obtain an affidavit from an expert in the relevant field. Another attorney recommended Allan Kam, the sole owner of the plaintiff consulting firm, to Gomien.

On May 20, 2003, Gomien telephoned Kam at the plaintiff's office in Maryland, and they discussed Kam's qualifications, his hourly fee and his retainer. On May 28, 2003, Gomien again telephoned Kam and engaged his services to review the pending motion and other documents and provide an affidavit supporting the client's position. Also on that date, Gomien sent Kam a letter of engagement, a $3,000 retainer, and other relevant documents. Kam e-mailed Gomien on May 28 confirming their agreement and attached a copy of his curriculum vitae.

At Gomien's request, Kam contacted another attorney, Robert Palmer, who is an authority on preemption law. On June 2, 2003, Palmer sent Kam a copy of a CD-ROM containing material relevant to the preemption issue in the underlying lawsuit against Ford. Also on June 2, 2003, Gomien faxed Kam 23 additional pages of material to

review and mailed him two memoranda of law from other cases. On June 4, 2003, Gomien telephoned Kam and sent him a CD-ROM containing other documents for Kam's review.

On June 7, 2003, Kam sent a draft affidavit to Gomien at Gomien's vacation home in Texas. On June 18, 2003, Gomien telephoned Kam at his Maryland office to request revisions to the draft affidavit. Kam made the requested revisions and e-mailed the new draft to Gomien. On June 19, 2003, Gomien and Kam spoke on the telephone. Kam made further revisions to the affidavit and e-mailed those revisions to Gomien. On June 20, 2003, Kam's final, notarized affidavit was sent to Gomien's law office in Illinois accompanied by an invoice for Kam's services. The amount due exceeded the $3,000 retainer, and the defendant refused to pay the remainder due.

The plaintiff ultimately filed suit against the defendant in the district court of Maryland for Montgomery County. The defendant failed to appear in that suit. On April 14, 2004, the Maryland court granted a default judgment in favor of the plaintiff in the amount of $9,843.75.

On June 9, 2004, the plaintiff filed a petition to register a foreign judgment in the circuit court of Grundy County, Illinois. On June 22, 2004, the defendant entered a special appearance and filed a motion to vacate registration of foreign judgment, arguing that the Maryland judgment is void because Maryland lacks personal jurisdiction over the defendant. The parties submitted stipulated facts to the court via affidavit by Gomien and Kam, and the court heard legal argument on May 27, 2005. The court issued a written order on October 5, 2005, finding that Maryland properly exercised personal jurisdiction over the defendant and, thus, denying the defendant's motion.

On appeal, the defendant renews its argument that the Maryland judgment is void because the Maryland court lacked personal jurisdiction over it.  Specifically, the defendant maintains it did not transact business in Maryland and did not have sufficient contacts with the state.  The plaintiff, however, contends that the defendant's contacts with the State of Maryland constituted a transaction of business and that these contacts were constitutionally sufficient for Maryland to assert personal jurisdiction over it.  Our review is de novo.  Khan v. Van Remmen, Inc., 325 Ill. App. 3d 49, 756 N.E.2d 902 (2001).

Initially, the plaintiff argues that the defendant may not litigate in Illinois the question of Maryland's personal jurisdiction over the defendant under its long-arm statute.  The plaintiff claims the defendant forfeited the right to contest Maryland's jurisdiction by failing to do so in Maryland.  We disagree.  "'Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is res judicata.  [Citations.]'"  Sackett Enterprises, Inc. v. Staren, 211 Ill. App. 3d 997, 1001, 570 N.E.2d 702, 704 (1991).  However, the trial court may inquire into whether a sister state had subject matter and personal jurisdiction in the matter.  Sackett Enterprises, 211 Ill. App. 3d 997, 570 N.E.2d 702.

> "If this inquiry reveals a jurisdictional defect which would either render the foreign judgment void according to the law of the foreign State, or deprive the foreign court of jurisdiction over the nonresident under the general constitutional standards of due process, the foreign judgment has no constitutional claim to full faith and credit."  Sackett Enterprises, 211 Ill. App. 3d at 1001, 570 N.E.2d at 704.

4

Whether Maryland courts can exercise personal jurisdiction over a defendant starts with a two-part inquiry. MaryCLE, LLC v. First Choice Internet, Inc., 166 Md. App. 481, 890 A.2d 818 (2006). First, we must determine whether jurisdiction is authorized under Maryland's long arm statute. MaryCLE, 166 Md. App. 481, 890 A.2d 818. Second, we consider whether exercising jurisdiction in this case comports with federal constitutional due process requirements. MaryCLE, 166 Md. App. 481, 890 A.2d 818. Maryland courts have consistently construed their long-arm statute "to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." Bond v. Messerman, 391 Md. 706, 721, 895 A.2d 990, 999 (2006). "Thus, 'our statutory inquiry merges with our constitutional examination.' [Citation.]" MaryCLE, 166 Md. App. 481, 498, 890 A.2d 818, 828.

Maryland's long-arm statute provides, in pertinent part, "A court may exercise personal jurisdiction over a person, who directly or by an agent *** [t]ransacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. §6--103(b)(1) (2006). "A nonresident who has never entered the State, either personally or through an agent, may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State." Sleph v. Radtke, 76 Md. App. 418, 427, 545 A.2d 111, 115 (1988). In this case, the defendant initiated contact with the plaintiff in Maryland, contracted for its services, and sent a retainer and numerous documents to Maryland for Kam to review. Thus, the defendant transacted business in Maryland within the meaning of the statute. See Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc., 94 Md. App. 425, 617 A.2d 1125 (1993).

Federal due process requires that a "defendant ha[ve] sufficient 'minimum contacts' with the forum state, such that maintaining an action there comports with 'traditional notions of fair play and substantial justice.' [Citation.]" Bombliss v. Cornelsen, 355 Ill. App. 3d 1107, 1112, 824 N.E.2d 1175, 1179 (2005). To determine whether a court's exercise of jurisdiction over a defendant satisfies due process, we must consider: "(1) whether the nonresident defendant has minimum contacts within the forum state such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum State; and (3) whether it is reasonable to require the defendant to litigate in the forum State. [Citations.]" Pilipauskas v. Yakel, 258 Ill. App. 3d 47, 55, 629 N.E.2d 733, 739 (1994).

First, we consider whether the plaintiff's claim arises out of the defendant's contacts with Maryland. " 'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.' [Citation.]" MaryCLE, 166 Md. App. at 504, 890 A.2d at 832. In a contract case, only the dealings between the parties regarding the disputed contract are relevant to the question of whether a plaintiff's claim arises out of a defendant's contacts with the forum state. Travelers Casualty & Surety Co. v. Interclaim (Bermuda) Ltd., 304 F. Supp. 2d 1018 (N.D. Ill. 2004). Here, the plaintiff brought suit against the defendant in Maryland for payment owed under the parties' agreement for the plaintiff to provide an expert witness affidavit for the defendant's use in another lawsuit. This claim directly relates to the defendant's contacts with Maryland. Therefore, this requirement for personal jurisdiction is met.

6

Second, we address whether the defendant had fair warning that it may be required to defend itself in Maryland. The fair warning requirement may be met by showing that the defendant "purposefully availed himself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." Pilipauskas, 258 Ill. App. 3d at 56, 629 N.E.2d at 739. The quality and nature of the defendant's contacts with Maryland are critical to the question of purposeful availment. Hanson v. Denckla, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).

When a contract is at issue, courts have considered the following factors to determine the question of purposeful availment: "(1) who initiated the transaction, (2) where the contract was entered into, and (3) where the performance of the contract was to take place. [Citation]" Dilling v. Sergio, 263 Ill. App. 3d 191, 196, 635 N.E.2d 590, 594 (1994). "'The strongest factor that seems to have emerged, however, is a determination of whether the defendant initiated the business relationship in some way.'" Potomac Design, Inc. v. Eurocal Trading, Inc., 839 F.Supp. 364, 370 (D.Md. 1993), quoting Nueva Engineering, Inc. v. Accurate Electronics, Inc., 628 F. Supp. 953, 955 (D.Md. 1986).

In the instant case, the defendant "reached out" into Maryland by initiating contact with the plaintiff by telephone to secure its services. Additionally, the defendant repeatedly telephoned the plaintiff in Maryland and sent numerous documents to Maryland for Kam to review so he could prepare the requested affidavit. The defendant also sent the plaintiff's initial retainer to Maryland. Indeed, the defendant anticipated that the plaintiff would perform all of its work in Maryland. The defendant deliberately established contact and obligations with a Maryland resident. "'[T]he Due Process

7

Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.' [Citation.]" <u>Ruprecht Co. v. Sysco Food Services of Seattle, Inc.</u>, 309 Ill. App. 3d 113, 120, 722 N.E.2d 694, 700 (1999). Thus, we determine that the defendant purposely availed itself of the privileges of conducting business in Maryland. See <u>Ruprecht</u>, 309 Ill. App. 3d 113, 722 N.E.2d 694 (finding that nonresident corporation purposefully directed activities at Illinois where nonresident placed two orders with Illinois resident via fax and obtained information from resident via telephone); see also <u>Sleph</u>, 76 Md. App. 418, 545 A.2d 111.

Third, we must determine whether Maryland's exercise of personal jurisdiction over the defendant was constitutionally reasonable. To determine what is reasonable, courts consider several factors: "(1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies. [Citation.]" <u>Bombliss</u>, 355 Ill. App. 3d at 1115, 824 N.E.2d at 1181. The Supreme Court has asserted that, once purposeful availment has been established, a defendant must make a "compelling case" that it is unreasonable or unfair to require it to defend a suit out of state. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477, 85 L. Ed. 2d 528, 544, 105 S. Ct. 2174, 2185 (1985).

The defendant has failed to meet its burden. The defendant has not provided us with any compelling reasons to find that Maryland's exercise of jurisdiction over it was constitutionally unreasonable or unfair. In addition, the applicable factors weigh in favor

8

of the plaintiff's position. Maryland has an interest in affording its citizens a forum for relief in breach of contract situations, as the plaintiff has an interest in obtaining convenient relief. Furthermore, public policy supports Maryland's assertion of jurisdiction in this factual scenario. It is fairly routine in litigation to engage expert witnesses who live in states other than the forum state of the litigation. Entering into agreement in which the expert does most, if not all, of his work at his place of business reduces the costs of litigation for all parties. It would be unreasonable to deny such an expert a forum in his home state to adjudicate disputes over payment. Defendant could have provided by contract that any disputes would be resolved by Illinois courts. Of course, such a contract provision would likely dissuade out-of-state parties from contracting with defendant. As a practical matter, why would a Maryland resident, who was retained by an Illinois resident to perform services in Maryland, agree to a contract provision requiring him to come to Illinois to seek redress if the Illinois resident stiffed him on his bill? Thus, we find that Maryland properly asserted personal jurisdiction over the defendant in this case.

The defendant also claims the trial court erred by allowing the nonresident plaintiff to proceed in a civil action in Illinois. The defendant relies upon section 45--45(a) of the Limited Liability Company Act to argue the plaintiff may not pursue a civil action in Illinois because it is not registered to do business in Illinois. 805 ILCS 180/45--45(a) (West 2004). That statute reads, "A foreign limited liability company transacting business in this State may not maintain a civil action in any court of this State until the limited liability company is admitted to transact business in this State." 805 ILCS 180/45--45(a) (West 2004). The defendant does not cite any authority interpreting this

9

statute to apply in the case of a petition to register a foreign judgment.  We decline to apply the statute here, where the plaintiff seeks to enforce a foreign judgment under the full faith and credit clause of the federal Constitution, rather than initiate a new cause of action in Illinois.  U.S. Const., art IV, §1; 735 ILCS 5/12--650 et seq. (West 2004).

Based upon the above analysis, we conclude that Maryland properly exercised personal jurisdiction over the defendant.  In addition, we reject the defendant's claim that section 45--45 of the Limited Liability Company Act applies here.  Accordingly, the judgment of the Grundy County circuit court is affirmed.

Affirmed.

HOLDRIDGE and McDADE, JJ., concur.