No. 1-06-0407

ALAN T. ROBILLARD,               )     Appeal from the
                                    )     Circuit Court of
         Plaintiff-Appellee,     )     Cook County.
                                    )
          v.                    )     No. 05 MI 602137
                                    )
SCOTT W. BERENDS, THOMAS E.     )
PATTERSON, and the PATTERSON     )
LAW FIRM, P.C.,               )     Honorable
                                    )     Sanjay Tailor,
         Defendants-Appellants.     )     Judge Presiding.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The plaintiff, Alan T. Robillard (Robillard), is a resident of the State of Massachusetts, employed by Forensic Science Applications located in Vineyard Haven, Massachusetts, where he works as a questioned document examiner, including forensic consulting and providing expert advise and testimony in federal and state courts. The defendants Scott Berends and Thomas E. Patterson are attorneys licensed to practice law in the State of Illinois and employed by defendant, the Patterson Law Firm, P.C. (the Firm) located in Chicago, Illinois. The plaintiff was granted a default judgment in Massachusetts against the defendants. The plaintiff then registered the judgment here in Illinois under the Uniform Enforcement of Foreign Judgments Act (735 ILCS 5/12-650 et seq. (West 2004)), and subsequently served each defendant with a citation to discover assets. The defendants moved to quash the registration of the foreign judgment, claiming Massachusetts lacked personal jurisdiction over them. The circuit court denied the defendants' motion finding that jurisdiction in Massachusetts was proper. The defendants'

appeal, contending the circuit court erred in denying their motion to quash the registration of the foreign judgment for lack of personal jurisdiction. We affirm.

Defendants admit that on January 14, 2005, Berends initiated contact with plaintiff by telephoning him in Massachusetts requesting plaintiff's assistance as an expert witness concerning an alleged forged contract in a lawsuit defendants were handling in Chicago. Plaintiff was ultimately accepted by the defendants' client pursuant to his rate schedule to serve as their expert witness. The defendants transmitted documents to plaintiff in Massachusetts. On January 18, 2005, defendants asked plaintiff to provide a preliminary report of his conclusions after reviewing the documents. Plaintiff prepared a two-page, unsigned draft report that he transmitted via e-mail on January 21, 2005, to Chicago Illinois, where he was to give live testimony in the pending case.

There are minor areas of dispute between the parties in the facts of this case. Defendants assert that on January 21, 2005, plaintiff telephoned Berends to confirm that Berends had received the draft report, and plaintiff was reminded that he would need to make travel arrangements to testify in Chicago on January 24, 2005. Plaintiff contends that Berends called him on January 24, 2005, to request that he finalize his report and testify that day. Plaintiff further claims that Berends called him a second time on January 24, 2005, to inform him that his testimony would not be needed until January 25, 2005. On January 25, plaintiff called defendants from the airport and explained he could not be there at the designated time, and he was directed not to come. Apparently, defendants' client paid another expert who testified in the

case. After the case was completed, plaintiff transmitted his signed report and invoice to defendants.

Plaintiff claims that he received certain documentary evidence relating to the lawsuit from Berends, examined the evidence in his Massachusetts lab and reported his preliminary results to Berends by telephone from Massachusetts. He further claims he was instructed to prepare a written report of his findings. On January 21, 2005, Berends telephoned plaintiff in Massachusetts and requested plaintiff to make arrangements to travel from Massachusetts to Chicago to testify at a hearing on January 24, 2005. Plaintiff prepared a written "Examination of Questioned Documents" in Massachusetts and sent it to Berends via e-mail on January 21, 2005. Berends reviewed the report and discussed certain problems with the report. Plaintiff then revised the report in Massachusetts and sent the corrected report to Berends via e-mail on January 24, 2005. Plaintiff purchased an airline ticket for January 24, and on that date, Berends telephoned plaintiff in Massachusetts to advise that the hearing was postponed to January 25, 2005, and requested plaintiff to be there at that time.

On January 25, 2005, while in line to board the plane, plaintiff telephoned Berends and was advised that his testimony was not necessary. On the evening of January 25, 2005, Berends contacted plaintiff in Massachusetts and discussed the hearing and directed plaintiff to telephone another expert, Jim Hayes, who was working with defendants concerning the testimony of the opposing expert. On January 27, 2005, plaintiff telephoned Hayes from Massachusetts and shortly thereafter Berends asked plaintiff if he would be interested in working with defendants on

3

another matter. Plaintiff sent his bill and the defendants offered no explanation as to why they failed to pay the bill.

The plaintiff ultimately filed suit against the defendants in Dukes County, Massachusetts. The defendants failed to appear in that suit. On August 3, 2005, a default judgment was entered by the Edgartown district court of the Commonwealth of Massachusetts in the amount of $3,207.96. Plaintiff filed this action to enforce the Massachusetts default judgment. Defendants moved to quash the registration of the default judgment and the circuit court, municipal division, found that Massachusetts properly exercised personal jurisdiction over the defendants and, thus, denied the defendants' motion.

On appeal, the defendants renew its argument that the Massachusetts judgment is void because the Massachusetts court lacked personal jurisdiction over them. Specifically, defendants maintain they did not transact business in Massachusetts and did not have sufficient contacts with the State. The plaintiff, however, contends that the defendants' contacts with him in the Commonwealth of Massachusetts constituted a transaction of business, and that these contacts were constitutionally sufficient for Massachusetts to assert personal jurisdiction over them.

The standard of review that applies to questions of law involving the registration of foreign judgments is de novo. Thorson v. La Salle National Bank, 303 Ill. App. 3d 711, 714 (1999); Khan v. Van Remmen, Inc., 325 Ill. App. 3d 49 (2001).

Defendants claim that plaintiff had the burden of proving that the trial court had jurisdiction over defendants and that they failed to meet that burden and as a result the

Massachusetts court lacked personal jurisdiction over them. Plaintiff contends that the defendants' contacts with the Commonwealth of Massachusetts constituted a transaction of business and that these contacts were constitutionally sufficient for Massachusetts to assert personal jurisdiction over defendants.

## ANALYSIS

Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is res judicata. Sackett Enterprises, Inc. v. Staren, 211 Ill. App. 3d 997, 1001 (1991). However, the trial court may inquire into whether a sister state had subject matter and personal jurisdiction in the matter. Sackett, 211 Ill. App. 3d at 1001.

In Sackett, this court stated:

> "If this inquiry reveals a jurisdictional defect which would either
>
> render the foreign judgment void according to the law of the
>
> foreign state, or deprive the foreign court of jurisdiction over the
>
> nonresident under the general constitutional standards of due
>
> process the foreign judgment has no constitutional claim to full
>
> faith and credit." Sackett, 211 Ill. App. 3d at 1001.

Whether Massachusetts courts can exercise personal jurisdiction over a defendant starts with a two-part inquiry. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76, 79 (1979). First, we must determine whether jurisdiction is authorized under Massachusetts' long-arm statute. Second, we consider whether exercising jurisdiction in this

case comports with federal constitutional due process requirements. The focus of the court is whether there was some minimum contact with the Commonwealth that resulted from an affirmative, intentional act of the defendants, such that it is fair and reasonable to require the defendants to come into Massachusetts to defend the action. Good Hope, 378 Mass. at 7, 379 N.E.2d at 80.

The Massachusetts long-arm statute provides in part:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this Commonwealth;

(b) contracting to supply services or things in this

Commonwealth[.]" Mass. Gen. Laws ch. 223A, §§3(a)(b) (1986).

While it is the plaintiff who has the burden of proving that the court has jurisdiction over the defendants, the court must view the facts relevant to the jurisdictional issue in the light most favorable to the plaintiff. Tatro v. Manor Care, Inc., 416 Mass. 763, 765, 767, 625 N.E.2d 549, 550, 554 (1994).

In this case, plaintiff contends that defendants transacted business in Massachusetts within the meaning of section 3(a) of the Massachusetts long-arm statute, and plaintiff's claim arose from defendants' transaction of that business. We agree.

The "transacting any business" clause in section 3 has been construed broadly. Tatro, 416

6

Mass. at 767, 625 N.E.2d at 551. The Supreme Judicial Court of Massachusetts has held that the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement. In Tatro, a nonresident defendant who solicited and obtained meeting and convention business from Massachusetts businesses and maintained telephone and mail contact with them, transacted business in the Commonwealth, see also Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983)(purposeful actions of law school in mailing application information to applicant in Massachusetts and acceptance letter were sufficient, without more, to constitute the transaction of business).

Massachusetts courts have also found that a defendant need not be physically present in a Commonwealth in order to "transact business" in the Commonwealth. Workgroup Technology Corporation v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003). Even just a few acts on a defendant's part can often suffice to satisfy the long-arm statute's threshold for transacting business. Workgroup, 246 F. Supp. 2d at 110. Actions such as telephone calls, e-mails and faxes to a plaintiff in Massachusetts for the purpose of negotiating the terms of a contract are sufficient to satisfy the "transacting business" requirement of section 3(a) when the contacts are crucial to the formation of the contract in dispute as opposed to purely incidental matters. Workgroup, 246 F. Supp. 2d at 110. See also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002) (Massachusetts law professor hired as expert witness by Mississippi law firm established personal jurisdiction over firm in suit for fees because the firm transmitted facts and information into Massachusetts via telephone and mail and

7

the professor performed his research and writing in Massachusetts).

Even an isolated "one-shot" transaction with little impact on the commerce of Massachusetts may constitute the transaction of business. A-Connoisseur Transportation Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 42 (D. Mass. 1990); Haddad v. Taylor, 32 Mass. App. Ct. 332, 335, 588 N.E.2d 1375, 1377 (1992) (nonresident agent, acting on behalf of principal, "transacted business" in Commonwealth, even though agent was not physically present, where agent negotiated for sale of land located in the Commonwealth, spoke on telephone with a potential buyer located in the Commonwealth, telephoned and wrote to his attorney in the Commonwealth, and hired a real estate broker in Commonwealth, and the cause of action arose out of those negotiations).

In the case at bar, defendants transacted business in Massachusetts through telephone calls to Robillard in Massachusetts for the purpose of negotiating an expert witness agreement; the transmission of documents and information to Robillard for examination; consultation with Robillard regarding his findings and opinions; supervision of Robillard's preparation of a written report; and the preparation and planning for Robillard's appearance and testimony at trial. These contacts were not "incidental" and were clearly sufficient to satisfy the "transacting business" section of the Massachusetts long-arm statute. As in Daynard, defendants' transmission of documentary evidence into Massachusetts via e-mail for review by Robillard and for use in preparing his expert report in Massachusetts constitutes evidence of direct contact with the forum state. As in Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079 (1st Cir. 1973) defendants'

8

supervision and direction of Robillard's analysis and written report constituted evidence of substantial contact with the forum state. As in Hahn, defendants' contacts with Robillard were neither random, isolated, nor incidental. The defendants in this case purposefully sought out Robillard and successfully entered into a contract with him.

Defendants rely on numerous cases to support their position that their activities were insufficient to satisfy the statutory requirements of section 3(a) of the Massachusetts' long-arm statute. These cases are factually distinguishable from the case at bar.

In "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass., 441, 280 N.E.2d 423 (1972), the court found insufficient contact to confer personal jurisdiction where the defendants only contacts with the Commonwealth consisted of the affirmance of a contract for a palletizing machine and making of partial payments pursuant to the contract through the mail. "Automatic", 361 Mass. at 444, 280 N.E.2d at 425. In "Automatic", there is no evidence that the defendant purposefully sought out the plaintiff, that it transmitted information to the plaintiff in Massachusetts or supervised the plaintiff's work.

In Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 376 N.E.2d 548 (1978), the court found defendants' contacts with Massachusetts to be insufficient to constitute the transaction of business. The defendants' only contacts with Massachusetts were the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff in Massachusetts in regard to the purchase of two marine engines, the sending of correspondence to the plaintiff confirming the sale and the shipment of

9

the marine engines to plaintiff in Massachusetts. Droukas, 375 Mass. at 154, 376 N.E.2d at 551. In Droukas, the defendants' initial contact with the plaintiff was the result of a random advertisement and involved one isolated sale.

In Irma S. Mann Strategic Marketing, Inc. v. Innovatex Research & Development, Inc., 1993 Mass. App. Div. 233 (1993), the court found the defendants' contacts with Massachusetts to be limited. Irma, 1993 Mass. App. Div. at 234. In Irma the defendant did not initiate the original contact for marketing services between itself and the plaintiff; it did not actively participate in the performance of the contract; and, unlike in the case at bar, it did not supervise any aspect of the work done by the plaintiff.

In Lyle Richards International, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997), the court found the defendant's contacts with Massachusetts to be incidental where there was no requirement that performance of plaintiff's obligations as a purchasing agent take place in Massachusetts. In that case the defendant reasonably assumed it would be doing business with plaintiff in New Hampshire and did in fact conduct most of its business there. Lyle Richards, 132 F.3d at 113.

Unlike the cases relied on by defendants, in this case, the defendants purposefully and successfully sought out Robillard in Massachusetts. The defendants contemplated and expected most of Robillard's services to be performed in Massachusetts as they transmitted documents to Massachusetts for analysis at Robillard's lab. Defendants did not simply hire Robillard to testify in Chicago, they hired him to analyze the documents, draft a report and prepare with them for

trial. The majority of those services were in fact performed in Massachusetts and are the basis of Robillard's claim against defendant. Moreover, defendants actively supervised Robillard's work by reviewing his opinion and editing his expert report while Robillard was in Massachusetts. As such, defendants clearly transacted business in Massachusetts under the long-arm statute and jurisdiction over them was appropriate as the trial judge found. Thus, defendants' transacted business in Massachusetts within the meaning of the statute.

Federal due process requires that a "defendant ha[ve] sufficient 'minimum contacts' with the forum state, such that maintaining an action there comports with 'traditional notions of fair play and substantial justice.' [Citation.]" Bombliss v. Cornelsen, 355 Ill. App. 3d 1107, 1112 (2005). To determine whether a court's exercise of jurisdiction over a defendant satisfies due process, we must consider: "(1) whether the non-resident defendant has minimum contacts within the forum State such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum State; and (3) whether it is reasonable to require the defendant to litigate in the forum State. [Citations.] "Pilipauskas v. Yakel, 258 Ill. App. 3d 47, 55 (1994).

First, we consider whether plaintiff's claim arises out of the defendants' contacts with Massachusetts. In Highway Traffic Safety Associates, LLC v. Gomien & Harrop, No. 3-05-0786, slip op. at 8-9 (October 17, 2006) a similar case was decided finding that a Maryland resident's claim arose out of the defendant's contacts with the state of Maryland. " ' "If a defendants contacts with the forum state are related to the operative facts of the controversy, then

an action will be deemed to have arisen from those contacts." [Citation.]' " Highway Traffic Safety Associates, LLC., slip op. at 7, quoting MaryCLE, LLC v. First Choice Internet, Inc., 166 Md. App. 481, 504, 890 A. 2d 818, 832 (2006). In a contract case, only the dealings between the parties regarding the disputed contract are relevant to the question of whether a plaintiff's claim arises out of a defendants' contacts with the forum state. Travelers Casualty & Surety Co. v. Interclaim (Bermuda) Ltd., 304 F. Supp. 2d 1018 (N.D. Ill. 2004). In this case, the plaintiff brought suit against defendants in Massachusetts for payment owed under the parties' agreement for plaintiff to provide an expert witness report for defendants' use in another lawsuit and for the plaintiff to come to Chicago to testify. Defendants contacted plaintiff in Massachusetts and engaged in telephone, facsimile, postal mail and e-mail communications with plaintiff in Massachusetts. In addition, defendants contemplated an on-going relationship with plaintiff in Massachusetts. This claim directly relates to the defendants' contacts with Massachusetts. Therefore, the requirement for personal jurisdiction is met.

Second, we address whether the defendants had fair warning that it may be required to defend themselves in Massachusetts. The "fair warning" requirement may be met by showing that the defendants "purposefully availed themselves of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." Pilipauskas, 258 Ill. App. 3d at 56. The quality and nature of the defendants' contacts with Massachusetts are critical to the question of purposeful availment. Hanson v. Denckla, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).

12

When a contract is at issue, courts have considered the following factors to determine the question of purposeful availment: "(1) who initiated the transaction, (2) where the contract was entered into, and (3) where the performance of the contract was to take place. [Citation.]" Dilling v. Sergio, 263 Ill. App. 3d 191, 196 (1994). " ' "The strongest factor that seems to have emerged, however, is a determination of whether the defendant initiated the business relationship in some way." ' " Highway Traffic Safety Associates, LLC v. Gomien and Harrop, slip op. at 8, quoting Potomac Design, Inc. v. Eurocal Trading, Inc., 839 F. Supp. 364, 370 (D. Md. 1993), quoting Nueva Engineering, Inc. v. Accurate Electronics, Inc., 628 F. Supp. 953, 955 (D. Md. 1986)..

In this case, the defendants "reached out" into Massachusetts by initiating contact with plaintiff by telephone to secure his services. Additionally, defendants reportedly telephoned plaintiff in Massachusetts and sent numerous documents to Massachusetts for plaintiff to review so he could prepare the requested documentation. Indeed, the defendants anticipated that plaintiff would perform all of his work in Massachusetts with an exception of his trial testimony. The defendants deliberately established contact and obligations with a Massachusetts resident. " '[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.' [Citation.]" Ruprecht Co. v. Sysco Food Services of Seattle, Inc., 309 Ill. App. 3d 113, 120 (1999). Thus, we determine that the defendants purposely availed themselves of the privileges of conducting business in Massachusetts. See Ruprecht, 309 Ill. App. 3d at 113 (finding that a nonresident corporation

purposefully directed activities in Illinois when a nonresident placed two orders with an Illinois resident via fax and obtained information from the resident via telephone).

Third, we must determine whether Massachusetts' exercise of personal jurisdiction over the defendants was constitutionally reasonable. To determine what is reasonable, courts consider several factors: "(1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies. [Citation.]" Bombliss, 355 Ill. App. 3d at 1115. The United States Supreme Court has asserted that, once purposeful availment has been established, a defendant must make a "compelling case" that it is unreasonable or unfair to require it to defend a suit out of state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 85 L. Ed. 2d 528, 544, 105 S. Ct. 2174, 2185 (1985).

The defendants have not provided us with any compelling reasons to find that Massachusett's exercise of jurisdiction over them was constitutionally unreasonable or unfair. In addition, the applicable factors weigh in favor of the plaintiff's position. Massachusetts has an interest in affording its citizens a forum for relief in breach of contract situations, as the plaintiff has an interest in obtaining convenient relief. Furthermore, public policy supports Massachusetts' assertion of jurisdiction under this factual scenario. It is fairly routine in litigation to engage expert witnesses who live in states other than the forum state of the litigation. Entering into an agreement where the expert does most, if not all, of his work at his place of

14

business reduces the costs of litigation for all parties. It would be unreasonable to deny such an expert a forum in his home state to adjudicate disputes over payment for his services. Thus, we find that Massachusetts properly asserted personal jurisdiction over the defendants in this case.

Based on the above analysis, we conclude that Massachusetts properly exercised personal jurisdiction over the defendants. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McBride, P.J. and Garcia, J., concur.